SUNTECH OF CONNECTICUT, INC. *v.* LAWRENCE
BRUNOLI, INC., ET AL.
(AC 33485)

DiPentima, C. J., and Beach and Robinson, Js.

Argued March 11—officially released June 25, 2013

*Jane I. Milas,* with whom was *Michael W. Lynch,* for the appellant (plaintiff).

*John B. Farley,* with whom was *William S. Wilson II,* for the appellees (defendants).

BEACH, J. The plaintiff, Suntech of Connecticut, Inc. (Suntech), appeals from the judgment of the trial court rendered in favor of the defendants, Lawrence Brunoli, Inc. (Brunoli), and Safeco Insurance Company of America (Safeco). Suntech claims the court erred in concluding that Suntech had not proven that (1) Brunoli breached its subcontract with Suntech and (2) Safeco violated General Statutes § 49-42. We affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to this appeal. Brunoli was the general contractor on a project known as "Renovations to Terminal A at Bradley Airport" (project). Brunoli contracted directly with the owner of the project, the Connecticut Department of Transportation (department). In April, 2005, Suntech entered into a subcontract with Brunoli under which Suntech, in connection with the project, was to construct and to install a large glass wall, known as a curtain wall, which was to form a substantial portion of the airport terminal. Under the subcontract, Suntech was to provide glass doors, glass, glazing, an aluminum framing system and a metal panel system.

There was, however, a discrepancy in the plans that the department had prepared and submitted to prospective bidders. The curtain wall appeared fourteen inches shorter in height in the structural plan than it did in the architectural plan. Under the specifications of the structural plan, the curtain wall would not have reached the roof of the building. Suntech reviewed the plans prior to making its bid and prior to entering into the subcontract with Brunoli. The bids or estimates submitted by Suntech were based, in part, on those plans; however, the discrepancy regarding the height of the curtain wall was not noticed at that time.

After having been awarded the subcontract and having noticed the discrepancy, Suntech revised the plans for the glazed aluminum framing system (system) and provided a new shop drawing of the system to the department for its review and approval. Among other changes, the upper spans of the mullions—aluminum frames which support glass panels—were increased. The greater span of the curtain wall required a recalculation of the deflection criteria.[1] The new deflection criteria, as reflected in the revised plans, required reinforced steel bars to be placed inside each mullion and required that the steel reinforcement be extended to a greater height within the mullions. This change added 44,000 pounds of steel to the mullions, and the deflection criteria were changed again after the steel reinforcement and new specifications were ultimately agreed upon.

Suntech submitted several revised cost estimates because of the changes in specifications. Brunoli approved two change orders that provided for an additional payment of $110,000. The department informed Suntech that the revised drawings for the system were not acceptable because they exceeded the maximum deflection criteria. After another series of discussions, Suntech submitted a request for a change order based on additional work and expenses. Brunoli transmitted Suntech's request to the department, but the department rejected it.

Despite the fact that the department rejected Suntech's request, Brunoli issued a change order (# 427) that authorized a payment by Brunoli itself—without payment by the department—to Suntech in the amount of $110,440. Brunoli claimed the payment was made under duress in that Suntech threatened to discontinue work on the project unless pending financial issues

---

[1] The court stated that the "deflection criteria" is a calculation relative to the movement and stress bearing capacity of different materials.

were satisfactorily resolved. After the issuance of change order # 427, Brunoli pursued an appeal through the department's contract board of review. The appeal submitted Suntech's claim for the charges brought about by the changes in the plans. The department again rejected the submission. The project was finished more than three years after the anticipated completion date.

Suntech brought an action against Brunoli and Safeco, an insurance company that had issued a payment bond to Brunoli for the project at issue. Suntech alleged breach of contract, unjust enrichment, delay, and an action under General Statutes § 49-41a against Brunoli. Suntech alleged a violation of § 49-42 against Safeco. The court found for the defendants on the complaint.[2] This appeal followed.

I

Suntech claims that the court erred in concluding that Brunoli did not breach its subcontract with Suntech. We disagree.

"The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." (Internal quotation marks omitted.) *Pelletier* v. *Galske*, 105 Conn. App. 77, 81, 936 A.2d 689 (2007), cert. denied, 285 Conn. 921, 943 A.2d 1100 (2008).

Within the context of the claims presented to us, the contract provisions at issue are clear and unambiguous; accordingly, our review of the provisions is plenary. "If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . [When] the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . [T]he individual clauses of

---

[2] Brunoli brought a counterclaim against Suntech. The court found in favor of Suntech. The counterclaim is not at issue in this appeal.

a contract . . . cannot be construed by taking them out of context and giving them an interpretation apart from the contract of which they are a part." (Citation omitted; internal quotation marks omitted.) *FCM Group, Inc.* v. *Miller*, 300 Conn. 774, 811, 17 A.3d 40 (2011).

The subcontract provided in relevant part as follows. Suntech was to "[f]urnish all materials, labor and equipment to perform work as described in the contract Drawings and special provisions, Connecticut D.O.T. standard specifications for Roads, Bridges and Incidental Construction Form 816, 2004 Addendums 1, 2, and 3. . . . Glass Doors . . . Glass & Glazing . . . Glazed Aluminum Framing System . . . Metal Panel Systems. . . . [A]s shown on Contract drawings; for the project entitled Bradley International Airport Terminal 'A' Renovations."

The State of Connecticut Department of Transportation, Standard Specifications for Roads, Bridges and Incidental Construction, Form 816 (2004) (Form 816) was incorporated by reference into the subcontract. Section 1.05.01 of Form 816 provides in relevant part: "All work shall be subject to review by the Engineer. He shall decide all questions as to interpretation of the plans and specifications, and questions of mutual or respective rights of the Contractor and other Department contractors. The Engineer shall decide on an acceptable rate of progress, on the manner of performance, and what shall be deemed acceptable fulfillment of the contract." Section 1.09.06 (1) regarding periodic payments provides in relevant part: "Once each month, the Engineer will make, in writing, current estimates of the value of work performed in accordance with the Contract, calculated at Contract unit prices, including but not limited to the value of materials complete in place and materials not yet incorporated into the Project, but approved by the Engineer for payment . . . ."

Paragraph III of the subcontract, which contained the "pay-when-paid" clause, provides in relevant part: "All billings must be approved by [Brunoli], and the Authority having jurisdiction [the department]; all billings must be submitted to this office no later than the 25th day of the month; all payments are subject to retainage and/or other applicable provisions as contained in the contract documents; payments will be made to the Subcontractor within 30 days of receipt of funds from the Owner provided the conditions as identified in Paragraphs I and II have been satisfied . . . ."

Suntech alleged in its complaint that Brunoli breached the subcontract in that it "failed to request payment from [the department] and has failed to remit payment to Suntech for certain completed and approved change order work by Suntech on the project." It alleged that Brunoli paid Suntech only a portion of the amount owed and failed to pay Suntech in full for its performance under the agreement. It alleged that Brunoli left a balance owed on completed work of approximately $164,600 and unpaid change orders and damages in the amount of $657,675.

Referencing §§ 1.05.01 and 1.09.06 of Form 816, the court stated that under the subcontract, the department's engineer had "discretion to determine . . . whether to accept or reject performance . . . what invoices were paid to both the general contractor and subcontractors, and to what extent they were paid. The authority of the [department] engineer was essentially the last word, short of the [department's] internal appeal process. . . . [T]he ultimate decision for approval of any particular invoice and payment for such invoice rested with the [department]." The court found that the evidence did not support Suntech's claim that Brunoli failed to submit Suntech's invoices to the department. The court determined that there was no

provision in the contract that made Brunoli directly responsible to Suntech for delay damages, unless Brunoli was the cause of those delays and that the evidence did not support such a claim. The court concluded that, although "Suntech has undoubtedly incurred additional costs, expenses, and damages as a result of the delays of this project, they cannot be laid at the feet of [Brunoli]."

On appeal, Suntech claims that the court misapplied the "pay-when-paid" clause of paragraph III of the subcontract because that clause, according to case precedent, does not excuse payment by Brunoli, the contractor, but rather prescribes a reasonable time for payment to be made. Suntech further argues that the court erred by interpreting §§ 1.05.01 and 1.09.06 of Form 816 to provide the department's engineer with "final and unfettered say as to whether or not a subcontractor will be paid the balance due under the contract, even when the project has been satisfactorily completed and the work has been accepted." Suntech argues that those sections are irrelevant to a determination of the amount owed because once the job was complete, Suntech was owed the balance due under the contract. Suntech further argues that the court erred in making Brunoli "a mere conduit, simply passing information back and forth between Suntech and [the department]."

Suntech's argument focuses on the "pay-when-paid" provision of paragraph III of the subcontract. As noted previously, this provision provides: "[A]ll billings must be submitted to this office no later than the 25th day of the month . . . payments will be made to the Subcontractor within 30 days of receipt of funds from the [department] . . . ." Suntech's reliance on this provision is misplaced. It provided that Brunoli was to pay Suntech within a certain amount of time after the department had paid Brunoli for Suntech's work. The provision does not provide that Brunoli was to pay Suntech amounts that the department did not approve

or pay. Brunoli did not breach this provision. The court found that Suntech was unable to prove that Brunoli did not submit Suntech's invoices to the department according to the terms of the contract or that Brunoli withheld funds from Suntech that were paid to Brunoli by the department.[3]

In its memorandum of decision, the court described the billing process as follows. "The contract required Suntech to send monthly billings to [Brunoli] for work [it] had completed under a 'schedule of values.' The procedure followed consisted of [Brunoli] taking Suntech's requisitions, those of other subcontactors, and their own, and submitting them to [the department] for review and payment. [The department] would pay the invoices according to their own inspection and their opinion as to the amount of work which had been completed. Payment was made from [the department] to [Brunoli], and then in turn to the subcontractors, including Suntech."

The subcontract conferred exclusive authority to approve payment, including final payment, to the department engineer, subject to intra-department appeal. Paragraph III of the subcontract provides that: "All billings must be approved by Lawrence Brunoli Inc., and [by] the Authority having jurisdiction [the department] . . . ." Under the terms of the subcontract, the department engineer was responsible for approving and making payment. Form 816, which was incorporated by reference in the subcontract, provides in § 1.05.01 that: "All work shall be subject to review by the Engineer. . . . The Engineer shall decide on an

---

[3] "[I]t is the trier's exclusive province to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony." (Internal quotation marks omitted.) *Greene* v. *Perry,* 62 Conn. App. 338, 343, 771 A.2d 196, cert. denied, 256 Conn. 917, 773 A.2d 943 (2001). In its brief, Suntech has not pointed to any evidence to persuade us that these findings were clearly erroneous.

acceptable rate of progress, on the manner of performance, and what shall be deemed acceptable fulfillment of the Contract." The department engineer, then, had authority over all work performed, including Suntech's work, and had authority to accept or reject performance. Form 816 also gave the department engineer discretion regarding payment. Section 1.09.06 (1) regarding partial payments provides: "Once each month, the Engineer will make, in writing, current estimates of the value of work performed in accordance with the Contract, calculated at Contract unit prices, including but not limited to the value of materials complete in place and materials not yet incorporated into the Project, but approved by the Engineer for payment . . . ." Section 1.09.07, regarding final payments, provides: "When the Commissioner has accepted the Project, the Engineer shall prepare a final payment estimate. It shall state the entire amount of each item of the Project work performed, the value thereof, and the amount of all payments made on prior estimates, all such estimated payments being merely partial payments and subject to correction in the calculation of the final payment." Under the terms of the subcontract, to which Suntech agreed, the department engineer was vested with authority to approve payments; Brunoli merely passed payment from the department to Suntech.

Furthermore, the subcontract clearly and unambiguously provided that Suntech waived any claims against Brunoli for damages due to delays caused by the department's failure to accept responsibility. The court noted in its decision, and Suntech stated in its brief, that the increased costs and delays were a large part of the damages sought by Suntech. Paragraph V of the subcontract provides: "[T]he Subcontractor [Suntech] agrees not to assess any delay damages or claims against [Brunoli] unless the Owner [the department] accepts responsibility, and payment." The record does not reflect that

the department accepted responsibility; in fact, the department rejected Suntech's request for a change order based on additional work and expenses. Thus, under the terms of the subcontact, and the undisputed facts, Suntech cannot bring its claims against Brunoli for damages due to delays. In sum, the contractual arrangement clearly and unambiguously provided that Suntech had the ability to submit claims to Brunoli, who could submit Suntech's claims to the department. Brunoli had no obligation to pay the claim, however, unless the department first paid Brunoli.[4]

---

[4] Suntech argues that the court overlooked controlling Connecticut precedent regarding the legal effect and application of "pay-when-paid" provisions in construction contracts, citing *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 687 A.2d 506 (1997), and *DeCarlo & Doll, Inc.* v. *Dilozir*, 45 Conn. App. 633, 698 A.2d 318 (1997). In *Blakeslee*, the court expressly did not determine the enforceability of the "pay-when-paid" clause. *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, supra, 720. In *DeCarlo & Doll, Inc.*, the parties entered into a contract under which the plaintiff was to provide certain engineering and technical services for the development of the defendant's self-storage facility. *DeCarlo & Doll, Inc.* v. *Dilozir*, supra, 635. The contract provided that payment was due thirty days after the defendant was billed on the first invoice. Id., 640. The parties agreed to amend the contract to further provide that payment was to be made by the defendant to the plaintiff "[s]ubject to payment with all outstanding payments to be paid in full at time of financing of project." Id., 637. The plaintiff performed the services mentioned in the proposal and billed the defendant, but the defendant never received financing and failed to pay the entire bill for the plaintiff's services. Id. This court held: "Viewing the contract as a whole, we conclude that the clause 'subject to payment with all outstanding payments to be paid in full at time of financing' is not a condition precedent but a date of payment set by the defendant. Because financing was never obtained by the defendant, the time of payment should have been within a reasonable time." Id., 643. *DeCarlo & Doll, Inc.*, however, simply did not involve a "pay-when-paid" provision. Although the court made a comparison to "pay-when-paid" provisions, that comparison was dicta; see id., 641 n.4; and, in *DeCarlo & Doll, Inc.*, this court determined that the provision at issue did not establish an enforceable condition precedent for payment because the obligation to obtain financing was in the defendant's control. Id., 642.

The facts of this case differ significantly from *DeCarlo & Doll, Inc.* The contractual arrangement in that case was simply between two parties, and the defendant had inserted a handwritten sentence purporting to condition *all* payment on the defendant's obtaining financing. In this case, Suntech

Suntech makes several additional arguments support-
ing its contention that the court erred in denying its
claims for extra costs and delay damages. Each of these
claims can be resolved with reference to paragraph V
of the subcontract.

Suntech claims that the court failed to consider
whether the *Spearin* doctrine gave rise to liability on
the part of Brunoli.[5] See *United States* v. *Spearin*, 248
U.S. 132, 136, 39 S. Ct. 59, 63 L. Ed. 166 (1918) ("if the
contractor is bound to build according to plans and
specifications prepared by the owner, the contractor
will not be responsible for the consequences of defects
in the plans and specifications"). Suntech cites cases,
including *Southern New England Contracting Co.* v.
*State*, 165 Conn. 644, 656, 345 A.2d 550 (1974) (contrac-
tor not responsible for loss or damage resulting from
defective plans or specifications supplied by con-
tractee), for the proposition that Connecticut has
adopted the *Spearin* doctrine. Suntech argues that the
court found that the plans and specifications prepared
and distributed by the department were defective, but
improperly put the burden on Suntech for extra costs,
including delays, associated with the defective plans
and specifications in contravention of the *Spearin*
doctrine.

Regardless of whether the *Spearin* doctrine applies
in this case, Suntech agreed in paragraph V of the sub-
contract "not to assess any delay damages or claims
against [Brunoli] unless the Owner [the department]
accepts responsibility, and payment." As stated pre-
viously, because the department has not accepted

knowingly entered into a contractual arrangement, avenues of appeal
existed, the parties knowingly allocated risk in dealing with a sovereign and
Brunoli had no control over the "condition."

  [5] Suntech argued in its motion to reargue that the court improperly over-
looked the *Spearin* doctrine, which motion the court denied.

responsibility, Suntech cannot obtain delay damages from Brunoli.

Second, Suntech argues that by virtue of its notice of claim filed with the department pursuant to § 4-61[6] for increased costs and a time extension relating to the system, Brunoli treated the claim relating to the system as its own claim, rather than as Suntech's claim. Suntech seems to argue that Brunoli accepted responsibility for the claim simply by presenting it to the department, and that the trial court then erred in concluding that Brunoli was not liable to Suntech for the increased costs and in failing to analyze Suntech's claims on the merits. In support of its argument, Suntech cites *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, 239 Conn. 93, 105, 680 A.2d 1321 (1996), in which the court held that "a contactor cannot implead the state in an action against the contractor by a subcontractor unless the contractor admits liability to the subcontractor and incorporates the subcontractor's claim into its own, so that the contractor then has a disputed claim under its own direct contract with the state."

This case is different from *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, supra, 239 Conn. 93. In *Peabody, N.E., Inc.*, a subcontractor sought damages from Peabody, a general contractor, who in turn brought a common-law third-party indemnification complaint against the state. Id., 96. Peabody alleged, essentially, that if it was liable to the subcontractor, then the state was liable to it. Id., 100. Our Supreme Court held that . . . § 4-61 (a) did not waive the state's sovereign immunity, because the statute did not waive immunity for claims

---

[6] General Statutes § 4-61 (a) provides in relevant part: "Any person, firm or corporation which has entered into a contract with the state . . . for the design, construction, construction management, repair or alteration of any highway, bridge, building or other public works of the state or any political subdivision of the state may, in the event of any disputed claims under such contract . . . bring an action against the state. . . ."

of contingent liability. Id., 102–105. A holding to the contrary would, in effect, allow claims to be brought against the state, albeit indirectly, by subcontractors, who did not have a contract with the state. See id., 104.

The present case is in a different procedural and substantive posture. First, of course, we are concerned with an action against the contractor, not against the state. If Suntech is otherwise correct in its analysis, a consequence might be that part of Brunoli's action against the state would fail because its claim was contingent. Brunoli would not necessarily be deemed to have agreed to pay Suntech itself. More to the point, however, is the difference in contractual arrangements. The complex arrangement here apparently allowed Brunoli to include amounts claimed by Suntech in its claim—and Brunoli would be liable to Suntech for amounts recovered on its behalf.

Second, Brunoli's filing of the notice of a claim under § 4-61, in itself, did not constitute an admission of liability. See *Paragon Construction Co.* v. *Dept. of Public Works*, 130 Conn. App. 211, 225–27, 23 A.3d 732 (2011) (question of fact existed as to whether general contractor had "disputed claim" under § 4-61 where general contractor filed notice of claim and brought suit against state for amount owed to subcontractor). That fact notwithstanding, under paragraph V of the subcontract, Suntech agreed not to assert any delay damages against Brunoli unless the department accepted responsibility.

Third, Suntech argues that the court erred in concluding that "there is no legal principle under which the court could make [Brunoli] responsible to Suntech for the delay caused . . . by other subcontractors." Suntech argues that "Connecticut courts have routinely found that the failure of a general contractor to coordinate the work of one or more of its subcontractors is

a breach of contract subjecting the general contractor to liability for resulting damages incurred by another of its subcontractors. *Wilson* v. *Kapetan, Inc.*, 25 Conn. App. 529, 531–32 [595 A.2d 369] (1991). The failure of the trial court to consider whether Brunoli breached its contract with Suntech as a result of delays to Suntech's work caused by others of Brunoli's subcontractors constitutes error . . . ."

The court noted that the parties introduced evidence regarding the difficulties in installing specific mullions due to other subcontractors not completing their work in a timely fashion, but made no finding that Brunoli, as general contractor, failed to coordinate the work of other subcontractors. Rather, the court found that the evidence did not support Suntech's claim that Brunoli caused delays. Moreover, under paragraph V of the subcontract, Suntech agreed to limit its ability to assert delay claims against Brunoli to those in which the department accepts responsibility.

II

Suntech last claims that the court erred in rejecting its claim against Safeco for a violation of § 49-42.[7] Suntech argues that because the trial court's decision denying its claim against Safeco is wholly dependent on its decision with respect to the breach of contract claims against Brunoli, its decision in denying count five constitutes reversible error.[8] Suntech's argument depends on our

[7] General Statutes § 49-42 (a) provides in relevant part: "Any person who . . . performed subcontracting work . . . who has not received full payment for such . . . work within sixty days after the date . . . such work was performed, may enforce such person's right to payment under the bond. . . ."

[8] In count five of the complaint, Suntech alleged that Safeco, an insurance company which issued a payment bond to Brunoli for the project, violated § 49-42 by failing to make payment to Suntech after it made a claim under the bond. The court determined that the provision at issue in § 49-42 could be triggered only if the general contractor first received payment from the owner and then failed to pay the subcontractor. The court further determined that there was no authority supporting the conclusion that § 49-42 was

deciding that the court erred in denying Suntech's breach of contract claims against Brunoli. As previously stated in part I of this opinion, the court did not err in denying Suntech's breach of contract claims. The court, then, properly found in favor of Safeco on the fifth count of the complaint.

The judgment is affirmed.

In this opinion the other judges concurred.

meant to circumvent the provisions of the subcontract. The court found that Suntech failed to prove that Brunoli was in possession of any funds that the department paid on Suntech's account or that Brunoli violated the terms of its contract with Suntech.

