******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DANIEL C. SEALE *v.* GEOQUEST, INC., ET AL.
(AC 41407)

DiPentima, C. J., and Alvord and Moll, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant G Co. for negligence and negligent misrepresentation in connection with G Co.'s remediation of soil contamination on certain real property purchased by the plaintiff. The matter was tried to the court, which concluded that G Co. had not breached its duty of care to the plaintiff and rendered judgment in favor of G Co. On the plaintiff's appeal to this court, *held* that the trial court's finding that G Co. had not breached its duty of care to the plaintiff was not clearly erroneous and was supported by the evidence in the record: there was testimony from three licensed environmental professionals indicating that G Co. had followed industry standards and had not violated any state or municipal regulations, that the property effectively had been remediated in that the contaminated soil that remained on the property was in accordance with certain state agency remediation guidance documents, and that the plaintiff had incorrectly interpreted a soil remediation report prepared by G Co., and the trial court, as the sole arbiter of the credibility of those witnesses, determined the proper weight to be accorded to their specific testimony and bore the responsibility of resolving the conflicting testimony as to whether G Co., through the actions of its agent, had breached the duty of care regarding the remediation of the property; moreover, in the absence of a finding that G Co. breached its duty of care, G Co. did not make a misrepresentation of fact as to the conditions of the soil on the property.

Argued February 4–officially released April 30, 2019

*Procedural History*

Action to recover damages for, inter alia, the named defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Dubay, J.*; judgment for the named defendant, from which the plaintiff appealed to this court. *Affirmed.*

*Alan R. Spirer*, for the appellant (plaintiff).

*Cullen W. Guilmartin*, with whom, on the brief, was *Regen O'Malley*, for the appellee (named defendant).

*Opinion*

PER CURIAM. The plaintiff, Daniel C. Seale, appeals from the judgment of the trial court, following a bench trial, rendered in favor of the defendant, GeoQuest, Inc.[1] The dispositive issue on appeal is whether the court properly determined that the defendant did not violate the standard of care. We affirm the judgment of the trial court.

In March, 2014, the plaintiff entered into a contract to purchase 11 Minute Man Hill in Westport from a third-party seller. Prior to the closing, the third-party seller had an underground storage tank removed from the property. The third-party seller learned that this storage tank had leaked and contaminated the soil on the property. The third-party seller engaged an excavation company to remove the tank and this company, in turn, hired the defendant to remediate the soil contamination.

On August 12, 2014, the defendant, acting through its employee Jay Soltis, a licensed environmental professional and the defendant's vice president of environmental services, arrived on the property to supervise the remediation. As part of this process, the defendant removed approximately forty-one tons of soil. On August 13, 2014, Soltis wrote a report and e-mailed it to the excavation company that day. The report provided, in relevant part, as follows: "Excavation to the north was limited due to structural concerns for the site home (per [Connecticut Department of Energy and Environmental Protection (CT DEEP)] [G]uidance, excavation is not required when the structural stability of a building may be compromised). *With the exception of the northern sidewall, excavation continued until no visible or olfactory indications of contamination remained in the soils. . . . Based on the results of the confirmation sampling program, the fuel oil release has been effectively remediated in site soil, and no further environmental investigation or remediation is warranted at this time.*" (Emphasis added.) Soltis attached the test results from the laboratory, which showed that the soil contamination was below the relevant detection level of 500 milligrams per kilogram. This report subsequently was provided to the plaintiff and his attorney.

In 2015, the plaintiff decided to sell the property after having demolished the home that had existed thereon. The purchaser, SIR Development, LLC, engaged a remediation contractor, EnviroShield, Inc., to determine whether any fuel contamination existed on the property. EnviroShield, Inc., estimated that between 300 and 400 tons of contaminated soil needed to be removed, and indicated that the source of this contamination was "beneath the former residence location."

The plaintiff then hired Mark A. Gottlieb, a licensed

environmental professional, to further investigate the soil contamination at the property. Gottlieb supervised the remediation and issued a December 1, 2015 report indicating that approximately 130 tons of soil had been removed. The plaintiff had the property remediated at a cost of approximately $45,000.

In April, 2016, the plaintiff commenced this action. The plaintiff's complaint set forth two counts sounding in negligence and negligent misrepresentation. The court found that the plaintiff had failed to meet his burden of proof as to these causes of action. "The three licensed environmental professionals [who had testified at the trial, Gottlieb, Soltis, and Marc I. Casslar, the president of the defendant] unanimously agreed that the [defendant] did not violate any state or municipal rule or regulation. The contaminated soil left on site was in accordance with the CT DEEP Guidance. The court finds that the plaintiff failed to prove any breach of reasonable care on the part of the [defendant]." Accordingly, the court rendered judgment in favor of the defendant. This appeal followed.[2] Additional facts will be set forth as needed.

The dispositive issue in this appeal is whether the defendant breached its duty of care. In his appellate brief, the plaintiff argues that the defendant's report indicated that the soil at the property had been " 'effectively remediated' " and that " 'no further environmental investigation or remediation is warranted at this time.' " He specifically contends that the defendant deviated from the standard of care for a licensed environmental professional by failing (1) to excavate to a sufficient depth to detect and remove accessible contaminated soil, (2) to take samples from the bottom of the excavation, (3) to include photographs and a site sketch in its report, (4) to specifically state in its report that contaminated soil remained on the property, and (5) to specifically state that further environmental investigation was warranted. The defendant counters that the court properly relied on the evidence to support its conclusion that the defendant had not breached its duty to the plaintiff. We agree with the defendant.[3]

As noted, the plaintiff's complaint set forth two causes of action: negligence[4] and negligent misrepresentation.[5] The court concluded that the defendant had not violated any state or municipal regulations and that the contaminated soil that remained on the property was in accordance with the CT DEEP Guidance. Therefore, the court reasoned that the plaintiff had failed to prove that the defendant had breached a duty owed to the plaintiff as a result of its conclusion that the property effectively had been remediated and that no further investigation or remediation was warranted at that time. As a corollary, the court determined that the defendant had not made a misrepresentation of fact to the plaintiff that it knew, or should have known, was false.

The plaintiff argues that the court improperly found that the defendant had not breached its duty of care. The determination of a breach of duty is reserved for the trier of fact. *Neuhaus* v. *DeCholnoky*, 280 Conn. 190, 217, 905 A.2d 1135 (2006); see also *Mirjavadi* v. *Vakilzadeh*, 310 Conn. 176, 191, 74 A.3d 1278 (2013); *Behlman* v. *Universal Travel Agency, Inc.*, 4 Conn. App. 688, 691, 496 A.2d 962 (1985).

"Because the . . . claim challenges the sufficiency of the evidence, which is based on the court's factual findings, the proper standard of review is whether, on the basis of the evidence, the court's finding . . . was clearly erroneous. . . . In other words, a court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficiency when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Moreover, we repeatedly have held that [i]n a [proceeding] tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine." (Internal quotation marks omitted.) *Arroyo* v. *University of Connecticut Health Center*, 175 Conn. App. 493, 513, 167 A.3d 1112, cert. denied, 327 Conn. 973, 174 A.3d 192 (2017).

In the present case, Gottlieb testified during cross-examination that Soltis' report indicated to him, as a licensed environmental professional, that the defendant had been aware of contaminated soil under the home. He further stated that the plaintiff incorrectly interpreted Soltis' report as stating that all the contaminated soil had been removed.[6] Gottlieb acknowledged that it would have been impossible for the defendant to ensure that the property was completely free of contaminated soil due to the presence of the home. Gottlieb could not identify any state or municipal law that the defendant had violated with respect to its work on the property. Finally, he conceded that even if the defendant had performed the remediation on the property in the exact manner that Gottlieb described, contaminated soil nevertheless would have been present under the foundation of the then-existing home.

Soltis testified that the defendant had been hired to assist in the remediation of the property in August, 2014. At that time, he was unaware of any plan to demolish the home then existing on the property, and Soltis testified that if the home had not been demolished, no additional remediation would have been necessary. He further opined that his report could not be read as asserting that no contaminated soil remained on the

property. He stated that leaving the contaminated soil in the northern sidewall was permissible under the CT DEEP Guidance and that, pursuant to that document, the defendant had completed an effective remediation. Finally, he noted that the defendant's work on the property followed industry standards.

Casslar testified that the Soltis report complied with industry customs and that he found it to be accurate and intelligible. He further noted his disagreement with Gottlieb's report and testimony regarding the remediation of the property supervised by Soltis. Casslar also described several flaws contained in Gottlieb's report.

In the present case, the trial court acted as the sole arbiter of the credibility of the licensed environmental professionals and determined the proper weight to be accorded their specific testimony. *Arroyo* v. *University of Connecticut Health Center*, supra, 175 Conn. App. 513. Furthermore, the court bore the responsibility of resolving the conflicting testimony as to whether the defendant, through the action of Soltis, had breached the duty of care regarding the remediation of the property. Id. We cannot say that the court's finding was clearly erroneous. Evidence existed in the record to support the finding that the defendant had not breached its duty of care, and after reviewing the record, this court is not left with the definite and firm conviction that a mistake has been committed.

The court concluded that the defendant had not breached its duty of care. Furthermore, in the absence of any such breach, the defendant did not make a misrepresentation of fact as to the conditions of the soil at the property. As a result, we conclude that the court properly rendered judgment in favor of the defendant.

The judgment is affirmed.

[1] Although the summons and complaint identified "GeoQuest, Inc.," and "Jay Soltis" as defendants, the marshal's return of service indicates that only GeoQuest, Inc., had been served with a copy of the summons and complaint on April 18, 2016. Following the filing of the answer and special defenses, all references in the court filings and pleadings have identified GeoQuest, Inc., as the sole defendant. In its memorandum of decision, however, the trial court referred to GeoQuest, Inc., and Jay Solits as the defendants. In this opinion, we refer to GeoQuest, Inc., as the defendant.

[2] The trial court denied the plaintiff's March 20, 2018 motion for articulation. This court granted the plaintiff's subsequent motion for review of the denial of the motion for articulation but denied the relief requested therein.

[3] As a result, we decline to consider the defendant's alternative grounds for affirming the judgment of the trial court, namely, that it did not owe a duty to the plaintiff and that it was not the cause in fact of the plaintiff's alleged damages.

[4] "A cause of action in negligence is comprised of four elements: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Lawrence* v. *O & G Industries, Inc.*, 319 Conn. 641, 649, 126 A.3d 569 (2015); see also *Ruiz* v. *Victory Properties, LLC*, 315 Conn. 320, 328, 107 A.3d 381 (2015).

[5] "Traditionally, an action for negligent misrepresentation requires the plaintiff to establish (1) that the defendant made a misrepresentation of fact, (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." (Internal quotation marks omitted.) *Coppola Construction Co.* v. *Hoffman Enterprises Ltd. Partnership*, 309 Conn. 342,

351–52, 71 A.3d 480 (2013); see also *National Groups, LLC* v. *Nardi*, 145 Conn. App. 189, 193, 75 A.3d 68 (2013).

[6] Specifically, the following colloquy occurred between Gottlieb and the defendant's counsel:

"Q. If [the plaintiff] testified that he read the report as stating that no soil contamination was left behind, would you agree—would you disagree with [the plaintiff's] reading of the report?

"A. Yeah. [He] is not correct here. There was detectable contamination in the north wall sample."

———————————————