******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ARTHUR PETRUCELLI *v.* CITY OF MERIDEN
## (AC 39630)

Prescott, Moll and Flynn, Js.

*Syllabus*

The petitioner appealed to the Superior Court from the decision of the citation hearing officer for the respondent city upholding a citation assessed against the petitioner for violating the respondent's anti-blight ordinance. The court rejected the petitioner's appeal, which included claims that, inter alia, the anti-blight ordinance was unconstitutional and that there was insufficient evidence to find him noncompliant with the ordinance. On appeal to this court, the petitioner claimed that the trial court abused its discretion in precluding the testimony of two of his witnesses, Y and K, and erroneously concluded that the respondent had not violated his due process rights, that the anti-blight ordinance was not unconstitutionally vague as applied to him, and that there was sufficient evidence establishing his noncompliance with the anti-blight ordinance. *Held*:

1. The trial court did not abuse its discretion in precluding Y's proffered testimony and, even if the court abused its discretion in precluding K's proffered testimony, the petitioner failed to demonstrate that the error was harmful; Y was called to testify out of order and K's testimony would not have operated to discredit the testimony of M, the respondent's housing inspector who issued the citation, because M did not testify that the petitioner told him he could enter the property alone at any time and, even if he had testified to this, K's testimony on this issue would have been cumulative.

2. The trial court did not err in concluding that the respondent had not violated the petitioner's due process rights; the record reflected that the petitioner received a written, detailed notice of the blight violation, the respondent conducted hearings regarding the blight violation at the petitioner's request, granted the petitioner multiple extensions of time to address the violations, and met with the petitioner at his property prior to the assessment being imposed.

3. The petitioner could not prevail on his claim that the anti-blight ordinance was unconstitutionally vague as applied to him; the evidence relied on by the petitioner did not establish that the respondent enforced the anti-blight ordinance in an arbitrary and discriminatory manner.

4. The trial court did not err in determining that there was sufficient evidence demonstrating that the property was blighted; photographs submitted at the hearing, along with the testimony of M, established that there was garbage, trash, litter, rubbish or debris on the property in violation of the anti-blight ordinance.

Argued November 14, 2019—officially released April 14, 2020

*Procedural History*

Petition to reopen a citation assessment issued by the respondent, brought to the Superior Court in the judicial district of New Haven, geographical area number seven, where the court, *Cronan, J.*, rendered judgment denying the petition, from which the petitioner appealed to this court. *Affirmed.*

*Jeffrey D. Brownstein*, for the appellant (petitioner).

*Stephanie Dellolio*, city attorney, with whom, on the brief, was *Deborah Leigh Moore*, former city attorney, for the appellee (respondent).

*Opinion*

MOLL, J. The petitioner, Arthur Petrucelli, appeals from the judgment of the trial court rendered in favor of the respondent, the city of Meriden (city), following a de novo hearing held on his petition to reopen an assessment entered against him by a citation hearing officer for violation of the city's anti-blight ordinance. On appeal, the petitioner claims that the court (1) abused its discretion by precluding, in whole or in part, two of his witnesses from testifying, (2) erroneously concluded that the city had not violated his due process rights, (3) erroneously concluded that the city's anti-blight ordinance was not unconstitutionally vague as applied to him, and (4) erroneously concluded that there was sufficient evidence establishing his noncompliance with the anti-blight ordinance. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. In 2003, pursuant to General Statutes § 7-148 (c) (7) (H) (xv),[1] the city enacted chapter 159 of the Code of the City of Meriden (anti-blight ordinance). Section 159-2 of the anti-blight ordinance provides in relevant part that "[n]o owner . . . of real property . . . located in the [c]ity of Meriden shall create, allow, maintain or cause to be maintained, continue, or suffer to exist a blighted premises." Section 159-3 of the anti-blight ordinance, in defining the term "blight," provides in relevant part that "[a]ny building or structure or any parcel of land in which at least one of the following conditions exists shall be considered blighted . . . B. It is not being maintained as defined herein.[2] . . . F. It is a substantial factor causing serious depreciation of the property values in the neighborhood. G. There exist at the property conditions promoting rodent harborage and/or infestation. H. There exist at the property overgrown shrubs, brush or weeds. I. Parking lots/areas are left in a state of disrepair or abandonment and/or are used to store abandoned or unregistered vehicles. . . . N. Garbage on the property is not stored in standard containers and/or is scattered throughout the yard. . . . Q. There exists on the property . . . trash, rubbish, rubble, tires, brush, used materials or discarded items of little or no value. . . ." (Footnote added.) Section 159-7 (A) of the anti-blight ordinance provides in relevant part that the ordinance "may be enforced by citation, in addition to other remedies, in accordance with [General Statutes] § 7-152c . . . . City of Meriden code enforcement officials shall have authority to issue citations."

The trial court set forth the following relevant procedural history in its corrected memorandum of decision dated October 10, 2017.[3] "On March 11, 2015, the City of Meriden Department of Development and Enforcement sent a letter to the [petitioner] concerning the condition of his property located at 48 Bradley Avenue in Meriden

[(property)]. This letter . . . referenced the authority granted to the city by the Connecticut General Statutes and incorporated in [§] 159-2 of the [anti-blight ordinance]. The letter detailed seven separate sections of the [anti-blight ordinance] that could be considered blight violations. On April 8, 2015, the [petitioner] requested a hearing before the Meriden Neighborhood Rehabilitation Advisory Board [(board)] concerning the notice sent to him. A hearing was held by the board on May 14, 2015, and the [petitioner] was granted a thirty day extension for the purpose of allowing the [petitioner] to come into compliance with the anti-blight ordinance.

"An inspection of the property was scheduled for June 22, 2015, but the [petitioner] sought an additional extension and one was granted by the board until July 22, 2015. When no apparent progress was made by the July 22 date, the [petitioner] was issued a citation for a violation of the anti-blight ordinance on July 30, 2015. The [petitioner] requested a hearing before a citation hearing officer. At a hearing held on September 28, 2015, the [petitioner] was granted an additional thirty day extension to address compliance issues. On October 26, [2015],[4] another hearing was held by the citation hearing officer where it was reported that the anti-blight issues were not addressed by the [petitioner]. The hearing officer assessed a fine of $500 for failure to comply with the ordinance which could be enhanced by a fine of $100 a day if compliance was not forthcoming." (Citation omitted; footnote added.)

In November, 2015, pursuant to General Statutes § 7-152c (g)[5] and Practice Book § 23-51,[6] the petitioner commenced the present action by filing a petition to reopen the October 26, 2015 assessment.[7] The petition set forth thirteen numbered paragraphs asserting various claims. The petitioner asserted, inter alia, that (1) the city had denied him due process by failing to provide him with adequate notice regarding his purported violation of the anti-blight ordinance, (2) the anti-blight ordinance was unconstitutionally vague as applied to him, and (3) there was insufficient evidence to demonstrate that he had violated the anti-blight ordinance. The petitioner requested that the trial court conduct a de novo hearing and grant him relief, inter alia, by reversing the assessment and prohibiting the city from enforcing any assessments pertaining to the property entered under either the anti-blight ordinance or a separate ordinance regarding abandoned, inoperable, or unregistered motor vehicles.

The trial court held a two day de novo hearing on the petition in March and April, 2016. On September 2, 2016, the court rendered judgment in favor of the city. In its October 10, 2017 corrected memorandum of decision, after dismissing each of the petitioner's claims set forth in the petition, the court stated that it "rejects the

appeal of the [petitioner] and returns the matter to the [city] to reimpose the penalties assessed by the hearing officer . . . ." This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The petitioner first claims that the trial court abused its discretion during the de novo hearing by precluding the proffered testimonies of John Yacovino, a deputy fire marshal of the city, and Thomas Kilroy, a city housing inspector. This claim is unavailing.

"It is well established that [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . [E]videntiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [petitioner] of substantial prejudice or injustice. . . . [I]n determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling . . . ." (Internal quotation marks omitted.) *Burns* v. *RBS Securities, Inc.*, 151 Conn. App. 451, 461–62, 96 A.3d 566, cert. denied, 314 Conn. 920, 100 A.3d 851 (2014).

The following additional facts are relevant to our resolution of this claim. During the first day of the de novo hearing, the petitioner called Yacovino as his first witness. Immediately after the clerk had sworn in Yacovino, the city's counsel objected, arguing that Yacovino's impending testimony would be irrelevant with regard to whether the petitioner had violated the anti-blight ordinance. The court stated that it was uncertain as to the purpose of Yacovino's testimony, as the petition to reopen the assessment did not contain a statement of facts. The petitioner's counsel responded that Peter Miller, the city housing inspector who had issued the July 30, 2015 citation to the petitioner, had testified during the October 26, 2015 citation hearing that, without an administrative warrant and without the petitioner being present, he had entered and inspected the property on the day of the hearing. The petitioner's counsel proffered that Yacovino would testify that, in his capacity as a city fire marshal, he had interacted with the petitioner on numerous occasions over the course of ten to fifteen years regarding fire code violations and that the petitioner had never permitted him to enter the petitioner's property without the petitioner's express authorization and without the petitioner being present. In reply, the city's counsel argued, inter alia, that there were other witnesses available who could offer testimony regarding whether Miller's entry onto the property was permissible and that Yacovino's proposed testimony was not germane to the present action. The petitioner's counsel retorted that the issue was not whether the petitioner had permitted Miller to enter the property, but whether Miller, when called to testify,

would be a credible witness.

Following argument, the court determined that the petitioner had called Yacovino as a witness out of order, stating: "I have the petition. I don't know what the issues are, at this point in time. And you're bringing [Yacovino in] and asking him questions about his interaction, with [the petitioner], over the years. It's – it's entirely out of order." On that basis, the court sustained the city's objection and excused Yacovino.

The petitioner next called Miller as a witness. Miller testified in relevant part as follows. During the September 28, 2015 citation hearing, the citation hearing officer granted the petitioner a thirty day extension of time to bring the property into compliance with the anti-blight ordinance. That same day, at the request of the petitioner and his counsel, Miller and a few other individuals met with the petitioner and his counsel on the property and conducted a "general tour" of the property. While on the property, a verbal agreement was reached pursuant to which the city was permitted to monitor the property periodically during the thirty day period. Miller interpreted the agreement to mean that he had authorization to enter the property at any time during the thirty day period regardless of whether the petitioner was present; however, Miller admitted that the petitioner had never told him expressly that he was permitted to enter the property unaccompanied at will. Thereafter, on October 26, 2015, before the start of the citation hearing held that day, Miller entered and inspected the property. The petitioner was not present during Miller's inspection.

After Miller finished testifying, the petitioner called Kilroy as a witness. At the outset, Kilroy testified that he had cited the petitioner for violating the anti-blight ordinance with respect to a different property in Meriden owned by the petitioner. The city's counsel objected, arguing that Kilroy's testimony regarding any anti-blight citation issued with respect to other property owned by the petitioner was irrelevant. The petitioner's counsel proffered that he intended to elicit testimony from Kilroy that, during Kilroy's past interactions with the petitioner, the petitioner had never allowed Kilroy to enter his property unattended. According to the petitioner's counsel, Kilroy's testimony was relevant because it would discredit Miller's purported testimony that the petitioner had given him permission to enter the property at any time, regardless of whether the petitioner was present, during the thirty day period following the September 28, 2015 citation hearing. The court stated that it could take judicial notice that the petitioner and the city "have been fighting with each other, probably, longer than we have been around" and "do not see eye to eye," but it agreed with the city's counsel that testimony from Kilroy regarding his encounters with the petitioner that were unrelated to

the property was irrelevant. Thereafter, Kilroy testified that he attended the September 28, 2015 citation hearing and that, during the hearing, there had been no agreement reached permitting the city to enter the property without the petitioner present. He further testified that he did not attend the subsequent meeting held on the property between Miller, the petitioner, and the petitioner's counsel, among others, on September 28, 2015.

The petitioner next called John Rutka, an acquaintance of the petitioner, to testify. Rutka testified that he was present at the September 28, 2015 meeting on the property and that he did not hear the petitioner agree to authorize Miller to enter the property unaccompanied at any time during the thirty day period following the September 28, 2015 citation hearing. The petitioner's counsel then called the petitioner as a witness. The petitioner testified in relevant part that he had never permitted Miller or any other city official to enter the property unless his counsel was present and the purpose of the entry was to discuss issues regarding the property.

On appeal, the petitioner claims that the court abused its discretion by precluding the proffered testimonies of Yacovino and Kilroy. The petitioner asserts that Yacovino and Kilroy would have testified that he had never permitted either of them, respectively, to enter his property without either him or his counsel present. The petitioner posits that the excluded evidence would have undermined the credibility of Miller, who, the petitioner contends, had testified that the petitioner had given him permission to enter the property, regardless of whether the petitioner was present, during the thirty day period following the September 28, 2015 citation hearing. According to the petitioner, Miller was a key witness whose testimony was critical to the court's determination that he had violated the anti-blight ordinance. We address the court's rulings as to Yacovino and Kilroy in turn.

A

We first consider the court's decision precluding Yacovino's proffered testimony. In precluding that testimony, the court determined that the petitioner had called Yacovino as a witness out of order. According to the petitioner, the purpose of Yacovino's proffered testimony was to attack Miller's credibility; however, Miller had not yet been called to testify. Precluding Yacovino's proffered testimony was reasonable given that the evidence that the proffered testimony was intended to discredit, namely, Miller's testimony, had not yet been admitted. The petitioner makes no argument that the court's determination that Yacovino was called out of order was improper. Thus, we conclude that the court did not abuse its discretion by precluding Yacovino's proffered testimony.

B

We next turn to the court's ruling precluding Kilroy's proffered testimony. Unlike Yacovino, the petitioner called Kilroy as a witness after Miller had testified. The court determined that Kilroy's proffered testimony was irrelevant because it had no nexus to the property, but rather concerned Kilroy's interactions with the petitioner relating to a different property owned by the petitioner. We conclude that, even if the court's preclusion of Kilroy's proffered testimony constituted an abuse of discretion, the petitioner has failed to demonstrate that the error was harmful.

"Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Harmful error occurs in a civil action when the ruling would likely affect the result. . . . It is the [petitioner's] burden to show harmful error." (Internal quotation marks omitted.) *Suntech of Connecticut, Inc.* v. *Lawrence Brunoli, Inc.*, 173 Conn. App. 321, 347, 164 A.3d 36 (2017), appeal dismissed, 330 Conn. 342, 193 A.3d 1208 (2018). "In those instances wherein a party claims that the trial court improperly excluded testimony, we undertake a review of the relationship of the excluded evidence to the central issues in the case and whether that evidence would have been merely cumulative of admitted testimony." (Internal quotation marks omitted.) *Doyle* v. *Kamm*, 133 Conn. App. 25, 35, 35 A.3d 308 (2012).

Here, the petitioner sought to introduce Kilroy's proffered testimony to discredit Miller, who purportedly testified that the petitioner had permitted him to enter the property at any time, regardless of whether the petitioner was present, during the thirty day period following the September 28, 2015 citation hearing. Contrary to the petitioner's belief, however, Miller testified that the petitioner did *not* tell him expressly that he could enter the property alone at any time; instead, Miller testified that he *interpreted* the verbal agreement reached by the parties during the September 28, 2015 meeting on the property, permitting the city to monitor the property periodically during the thirty day period, as authorizing him to have such open access to the property. Thus, Kilroy's proffered testimony would not have operated to discredit Miller. Additionally, even if Miller had testified that the petitioner had given him express permission to enter the property unaccompanied at will, both Rutka and the petitioner testified that the petitioner had never given Miller such authorization. As a result, at most, Kilroy's proffered testimony would have been cumulative. For these reasons, even if the court had abused its discretion by precluding Kilroy's proffered testimony on the relevancy ground cited by

the court, the petitioner has not established harmful error.

In sum, we conclude that (1) the court did not abuse its discretion by precluding Yacovino's proffered testimony, and (2) assuming that the court abused its discretion by precluding Kilroy's proffered testimony, the petitioner has failed to demonstrate that the court's ruling was harmful. Accordingly, the petitioner's claim challenging the court's preclusion of the proffered testimonies of Yacovino and Kilroy fails.

II

We next turn to the petitioner's claim that the trial court improperly concluded that the city did not deprive him of his due process rights.[8] Specifically, the petitioner asserts that the city failed to provide him with adequate notice and process in enforcing the anti-blight ordinance against him. We are not persuaded.

The petitioner's claim implicates his right to procedural due process. "[F]or more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified. . . . It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner. . . . [T]hese principles require that a [party] have . . . an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." (Internal quotation marks omitted.) *Merkel* v. *Hill*, 189 Conn. App. 779, 786–87, 207 A.3d 1115 (2019). "Whether a party was deprived of his due process rights is a question of law to which appellate courts grant plenary review." *McFarline* v. *Mickens*, 177 Conn. App. 83, 100, 173 A.3d 417 (2017), cert. denied, 327 Conn. 997, 176 A.3d 557 (2018).

In rejecting the petitioner's claim that the city had violated his due process rights, the court stated: "In this matter, the record reflects that the [petitioner] was first sent a notice of order informing him of possible blight violations on March 31, 2015.[9] On April [8], 2015, the [petitioner] requested a hearing before the [board] and was given a hearing on May 14, 2015. The [petitioner] was further granted a thirty day extension and a second thirty day extension [to come into compliance with the anti-blight ordinance]. After being issued a citation for noncompliance, the [petitioner] requested a hearing [before a citation hearing officer] and was given one. The [petitioner] was then granted an additional thirty day extension before the imposition of penalties. The court finds that there is no constitutional or legal basis on the part of the [petitioner] to claim a violation of his due process rights." (Footnote added.)

We agree with the court and conclude that the peti-

tioner has failed to demonstrate a violation of his due process rights. As the court found, the city provided the petitioner with a written, detailed notice of the blight violations, conducted hearings regarding the blight violations at the petitioner's request, and granted the petitioner multiple extensions of time to address the blight violations. In addition, the record reflects that city officials offered to meet with the petitioner on the property to discuss the blight violations prior to the issuance of the July 30, 2015 citation, and city officials toured the property with the petitioner on September 28, 2015, prior to the imposition of the citation assessment on October 26, 2015. Accordingly, we reject the petitioner's due process claim.[10]

## III

We now turn to the petitioner's claims that the court improperly concluded that (1) the anti-blight ordinance was not unconstitutionally vague as applied to him,[11] and (2) there was sufficient evidence demonstrating that he had violated the anti-blight ordinance. We are not persuaded.

The following additional facts are relevant to our resolution of these claims. The March 11, 2015 letter that the city sent to the petitioner, inter alia, notified the petitioner that the property was in violation of § 159-2 of the anti-blight ordinance because the conditions described in parts B, F, G, H, I, N, and Q of the definition of "blight" set forth in § 159-3 of the anti-blight ordinance were present on the property.[12] The trial court concluded that there was no evidence that the anti-blight ordinance was unconstitutional as applied to the petitioner or that the city had enforced the ordinance arbitrarily against the petitioner. Additionally, the court concluded that there was sufficient evidence establishing that the petitioner had violated the anti-blight ordinance and that "[n]o 'law abiding taxpayer' should have to own a property in proximity to the conditions created and maintained by the [petitioner]."

As a preliminary matter, we discuss the scope of the petitioner's claims that we are reviewing. From what we can distill from his appellate briefs, the petitioner asserts that (1) the anti-blight ordinance, in defining "blight" in general, was impermissibly vague as applied to him because "different city inspectors, different members of a city board and/or different various homeowners could disagree as to whether a certain condition of real property and/or an article of personal property is blight," and (2) certain specific portions of the "blight" definition were impermissibly vague as applied to him on various grounds. Additionally, the petitioner contends that there was no evidence introduced at the de novo hearing demonstrating that the conditions constituting blight existed on the property.

We need not consider whether each provision of the

anti-blight ordinance identified by the petitioner was unconstitutionally vague as applied to him nor whether there was evidence demonstrating that every condition of blight for which the petitioner was cited was present on the property. Section 159-3 of the anti-blight ordinance, in defining the term "blight," provides that "[a]ny building or structure or any parcel of land in which *at least one* of the following conditions exists *shall* be considered blighted . . . ." (Emphasis added.) Thus, any *one* of the enumerated conditions listed in § 159-3, if proven to exist, is sufficient to render a property blighted pursuant to the anti-blight ordinance. The trial court did not refer to any specific provisions of the anti-blight ordinance in rejecting the petitioner's claims. Keeping in mind that, "[i]f faced with . . . an ambiguity, we construe the court's decision to support, rather than to undermine, its judgment" and that "our appellate courts do not presume error on the part of the trial court [but], [r]ather, we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts"; (internal quotation marks omitted) *Barber* v. *Barber*, 193 Conn. App 190, 200–201, 219 A.3d 378 (2019); we may affirm the trial court's judgment if we conclude that the petitioner has failed to demonstrate that (1) any one of the provisions of the anti-blight ordinance that he was cited for violating was unconstitutionally vague as applied to him and (2) there was insufficient evidence establishing his noncompliance with that provision.

We conclude that the petitioner has not satisfied his burden with respect to part B of the definition of "blight" set forth in § 159-3 of the anti-blight ordinance, which provides that property that "is not being maintained" is considered blighted. Elsewhere in § 159-3, the phrase "not being maintained" is defined in relevant part as follows: "A structure is not being maintained if any of the following conditions apply: . . . C. Garbage, trash, litter, rubbish, or debris are situated on the premises."

A

We first consider whether § 159-3 of the anti-blight ordinance, insofar as it provides that property is blighted if it is not being maintained in that "[g]arbage, trash, litter, rubbish, or debris are situated on the premises," was unconstitutionally vague as applied to the petitioner. We conclude that it was not.

"As a threshold matter, it is necessary to discuss the applicable standard of review. A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . The party challenging a statute's constitutionality has a heavy burden of proof; the unconstitutionality must be proven beyond all reasonable doubt. . . . Additionally, in a vagueness challenge, such as this, civil statutes can be less specific

than criminal statutes and still pass constitutional muster. . . . To prove that a statute is unconstitutionally vague, the challenging party must establish that an ordinary person is not able to know what conduct is permitted and prohibited under the statute. . . .

"To demonstrate that [a statute] is unconstitutionally vague as applied to [him], the [petitioner] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . The determination of whether a statutory provision is unconstitutionally vague is a question of law over which we exercise de novo review." (Citations omitted; internal quotation marks omitted.) *Ogden* v. *Zoning Board of Appeals*, 157 Conn. App. 656, 668–69, 117 A.3d 986, cert. denied, 319 Conn. 927, 125 A.3d 202 (2015). The foregoing principles apply equally to municipal ordinances. See, e.g., id., 668–72 (analyzing claim that trial court erroneously concluded that zoning regulations were unconstitutionally vague as applied); *Booker* v. *Jarjura*, 120 Conn. App. 1, 24–26, 990 A.2d 894 (analyzing claim that trial court erroneously concluded that provision of city charter was not unconstitutionally vague as applied), cert. denied, 297 Conn. 909, 995 A.2d 636 (2010).

The petitioner does not contend on appeal that the terms "[g]arbage, trash, litter, rubbish, or debris" pursuant to § 159-3 of the anti-blight ordinance are ambiguous such that he had inadequate notice as to whether those conditions existed on the property;[13] rather, the only cognizable argument that the petitioner presents in support of his contention that the provision of the anti-blight ordinance at issue was impermissibly vague as applied to him is that different city officials and different homeowners could disagree as to whether the conditions on his property constituted blight. In essence, the petitioner appears to be raising the specter of the anti-blight ordinance being applied in an arbitrary and discriminatory manner.

"To demonstrate that [a] statute's vagueness gives an agency unbridled discretion to enforce the statute arbitrarily and discriminatorily, the challenging party must establish that he was the victim of such arbitrary and discriminatory enforcement." *Connecticut Building Wrecking Co.* v. *Carothers*, 218 Conn. 580, 592, 590 A.2d 447 (1991). The petitioner argues that the city arbitrarily targeted him as evidenced by a small claims

decision, admitted into evidence during the de novo hearing, wherein a magistrate rejected a claim submitted by him alleging that the city had wrongfully destroyed flowers and small trees that he had planted on a portion of his property. In rejecting the petitioner's claim, the magistrate concluded that (1) the city had failed to follow the procedures set forth in its ordinances in removing the plants and trees but (2) the petitioner had wrongfully planted the flowers and trees without a permit, such that he failed to suffer any compensable damages.[14] We are not persuaded that the city's failure to follow its ordinances in an unrelated matter involving the petitioner establishes that it enforced the anti-blight ordinance against the petitioner in an arbitrary and discriminatory manner. In addition, the petitioner thinly asserts that the city arbitrarily targeted him because Miller testified during the de novo hearing that he used a "zoom" feature on his cell phone to photograph the property. We can discern no visage of arbitrary and discriminatory enforcement on the basis of that evidence. Accordingly, the petitioner's void for vagueness claim fails.

B

We next turn to the question of whether there was insufficient evidence establishing that "[g]arbage, trash, litter, rubbish, or debris" was situated on the property in violation of the § 159-3 of the anti-blight ordinance. This issue warrants little discussion.

"Because the . . . claim challenges the sufficiency of the evidence, which is based on the court's factual findings, the proper standard of review is whether, on the basis of the evidence, the court's finding . . . was clearly erroneous. . . . In other words, a court's finding of fact is clearly erroneous and its conclusions drawn from that finding lack sufficiency when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Moreover, we repeatedly have held that [i]n a [proceeding] tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine." (Internal quotation marks omitted.) *Seale* v. *Geo-Quest, Inc.*, 189 Conn. App. 587, 592, 208 A.3d 326 (2019). Here, the petitioner cites to his own testimony elicited during the de novo hearing that he cleaned the property, thereby bringing it into compliance with § 159-3 of the anti-blight ordinance. The petitioner, however, overlooks the photographs of the property introduced into evidence during the hearing and Miller's testimony, which amply demonstrate that "[g]arbage, trash, litter,

rubbish, or debris" was situated on the property. Accordingly, we find no error in the trial court's determination that there was sufficient evidence demonstrating that the property was blighted.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 7-148 (c) (7) (H) (xv) authorizes a municipality to "[m]ake and enforce regulations for the prevention and remediation of housing blight, including regulations reducing assessments and authorizing designated agents of the municipality to enter property during reasonable hours for the purpose of remediating blighted conditions, provided such regulations define housing blight and require such municipality to give written notice of any violation to the owner and occupant of the property and provide a reasonable opportunity for the owner and occupant to remediate the blighted conditions prior to any enforcement action being taken, and further provided such regulations shall not authorize such municipality or its designated agents to enter any dwelling house or structure on such property, and including regulations establishing a duty to maintain property and specifying standards to determine if there is neglect; prescribe civil penalties for the violation of such regulations of not less than ten or more than one hundred dollars for each day that a violation continues and, if such civil penalties are prescribed, such municipality shall adopt a citation hearing procedure in accordance with section 7-152c."

[2] Section 159-3 of the anti-blight ordinance, in defining the phrase "not being maintained," provides in relevant part that "[a] structure is not being maintained if any of the following conditions apply . . . C. Garbage, trash, litter, rubbish, or debris are situated on the premises. D. Abandoned, wrecked, or junked motor vehicles are stored on the premises. E. Lawns, landscaping, or driveways are deteriorating or unkempt. . . ."

Section 159-3 of the anti-blight ordinance defines "debris" as "[m]aterial which is incapable of immediately performing the function for which it was designed, including but not limited to abandoned, discarded, or unused objects; junk or collections of equipment such as automobiles, boats and recreation vehicles which are missing parts, not complete in appearance and in an obvious state of disrepair; and parts of automobiles, furniture, appliances, cans, boxes, scrap metal, tires, batteries, containers, and garbage."

Section 159-3 of the anti-blight ordinance defines "litter" as "[a]ny discarded, used, or unconsumed substance or waste material, whether made of aluminum, glass, plastic, rubber, paper, or other natural or synthetic material, or any combination thereof, including but not limited to any bottle, jar, or can or any top, cap or detachable tab of any bottle, jar, or can; any unlighted cigarette, cigar, match or any flaming or glowing material; or any garbage, trash, refuse, debris, rubbish, glass clippings or other lawn or garden waste, newspaper, magazine, glass, metal, plastic, or paper containers or other packaging or construction material, which has not been deposited in a receptacle."

Section 159-3 of the anti-blight ordinance defines "rubbish" as "[a]ny nonputrescible waste materials, except ashes, including but not limited to paper, cardboard, tin cans, wood, glass, bedding, furniture, crockery, appliances, junk automobiles, demolition material, tree limbs, and industrial wastes."

[3] The trial court decided the petitioner's petition to reopen the assessment on September 2, 2016; however, on that date, it inadvertently issued in the present action a memorandum of decision pertaining to a related action, *Petrucelli* v. *Meriden*, Superior Court, judicial district of New Haven, Docket No. CV-16-5006564-S. On October 10, 2017, the court issued a corrected memorandum of decision setting forth its ruling on the petition filed in the present action.

[4] The corrected memorandum of decision states that the second citation hearing was held on October 26, 2016, which we presume to be a scrivener's error.

[5] General Statutes § 7-152c provides in relevant part: "(a) Any municipality as defined in subsection (a) of section 7-148 may establish by ordinance a citation hearing procedure in accordance with this section. The Superior Court shall be authorized to enforce the assessments and judgments provided for under this section.

***

"(g) A person against whom an assessment has been entered pursuant to this section is entitled to judicial review by way of appeal. An appeal shall be instituted within thirty days of the mailing of notice of such assessment by filing a petition to reopen assessment, together with an entry fee in an amount equal to the entry fee for a small claims case pursuant to section 52-259, at a superior court facility designated by the Chief Court Administrator, which shall entitle such person to a hearing in accordance with the rules of the judges of the Superior Court."

[6] Practice Book § 23-51 provides: "(a) Any aggrieved person who wishes to appeal a parking or citation assessment issued by a town, city, borough or other municipality shall file with the clerk of the court within the time limited by statute a petition to open assessment with a copy of the notice of assessment annexed thereto. A copy of the petition with the notice of assessment annexed shall be sent by the petitioner by certified mail to the town, city, borough or municipality involved.

"(b) Upon receipt of the petition, the clerk of the court, after consultation with the presiding judge, shall set a hearing date on the petition and shall notify the parties thereof. There shall be no pleadings subsequent to the petition.

"(c) The hearing on the petition shall be de novo. There shall be no right to a hearing before a jury."

[7] The petition was captioned as a "Petition to Reopen Assessment." We observe that § 7-152c (g) provides that a person against whom a citation assessment has been entered may institute an appeal by filing a "petition to *reopen* assessment . . . ." (Emphasis added.) By comparison, Practice Book § 23-51 (a) provides that an aggrieved person may appeal a citation assessment by filing a "petition to *open* assessment . . . ." (Emphasis added.) We will refer to the petition as a petition to "reopen" the assessment in conformity with the language of § 7-152c (g).

[8] We analyze the petitioner's due process claim under the federal constitution only because he has not provided an independent analysis of an alleged due process violation under the state constitution. See *Chief Disciplinary Counsel* v. *Rozbicki*, 326 Conn. 686, 694 n.8, 167 A.3d 351 (2017), cert. denied,     U.S.     , 138 S. Ct. 2583, 201 L. Ed. 2d 295 (2018).

[9] We presume that the court was referring to the March 11, 2015 letter sent to the petitioner by the city.

[10] Throughout his appellate briefs, the petitioner identifies a litany of purported defects in the notice and process with respect to the city's enforcement of the anti-blight ordinance against him. We find no merit to these claimed defects and need not discuss them further.

[11] "The void for vagueness doctrine is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution. . . . [Our Supreme Court has] equated vagueness analysis under our state constitution with the corresponding federal constitutional analysis." (Internal quotation marks omitted.) *Wethersfield* v. *PR Arrow, LLC*, 187 Conn. App. 604, 630–31, 203 A.3d 645, cert. denied, 331 Conn. 907, 202 A.3d 1022 (2019). The petitioner has not provided an independent analysis of his void for vagueness claim under the state constitution and, therefore, we limit our analysis to the federal constitution. See *Chief Disciplinary Counsel* v. *Rozbicki*, 326 Conn. 694 n.8, 167 A.3d 351 (2017), cert. denied,     U.S.     , 138 S. Ct. 2583, 201 L. Ed. 2d 295 (2018).

[12] The March 11, 2015 letter provides in relevant part: "Your property at 48 Bradley Avenue, Meriden, CT is in violation of [§ 159-2 of the anti-blight ordinance] and the following issues are to be addressed:

"Collect and properly dispose of any garbage, trash, litter, rubbish or debris situated on the premises. (§ 159-3 – Blight-Parts 'B' and 'N' and Not Being Maintained-Part 'C')

"Remove the abandoned, wrecked or junked motor vehicles stored on the premises. (§ 159-3 – Blight-Parts 'B' and 'I' and Not Being Maintained-Part 'D')

"Correct the deteriorated and unkempt conditions of the lawn, landscaping and driveway. (§ 159-3 – Blight-Parts 'B' and 'I' and Not Being Maintained-Part 'E')

"Correct the conditions that create a substantial factor causing serious depreciation of property values in the neighborhood. (§ 159-3 – Blight-Part 'F')

"Correct the conditions that promote rodent harborage or infestation. (§ 159-3 – Blight-Part 'G')

"Trim and maintain the overgrown shrubs, brush and weeds. (§ 159-3 –

Blight-Part 'H')

"Remove all trash, rubbish, rubble, tires, brush, used materials or discarded items of little or no value. (§ 159-3 – Blight-Part 'Q') . . . ."

[13] The terms "litter," "rubbish," and "debris" are defined in § 159-3 of the anti-blight ordinance. See footnote 2 of this opinion.

[14] The magistrate also concluded that the petitioner had failed to present evidence concerning the actual value of the flowers and trees.

—————————————————————